## Chenoa-Hignite Coal Co. v. Philpot's Admr.

### (Decided February 20, 1913.)

### Appeal from Bell Circuit Court.

1. Master and Servant—Personal Injury—Death—Action for Damages—Peremptory Instruction.—In an action by the administrator of the servant to recover damages for the death of his intestate, evidence examined and held sufficient to take the case to the jury.

2. Trial—Setting Aside Verdict—New Trial—Discretion of Judge.—A judgment setting aside a verdict and awarding a new trial will not be reversed unless it appears that there was an abuse of discretion on the part of the trial court.

SAMPSON & SAMPSON, WILLIAM AYRES, and C. I. DAWSON, for appellant.

W. R. LAY and J. D. TUGGLE, for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming on original and cross appeals.

In the month of September, 1910, the Chenoa-Hignite Coal Company began to open a coal mine near Chenoa, in Bell county. James Philpot, an employee, was struck and killed by a rock from a blast. His administrator brought this action to recover damages. On the first trial the jury returned a verdict for plaintiff in the sum of $8,000. The trial court set aside the verdict and awarded the defendant a new trial. The second trial resulted in a verdict and judgment in favor of plaintiff for $4,000. From that judgment the defendant appeals, and plaintiff prosecutes a cross-appeal for the purpose of reviewing the action of the trial court in setting aside the first verdict.

Defendant contends that a peremptory instruction should have gone, not only because there was a failure to show negligence on the part of the defendant, but because the proven facts show that deceased was guilty of contributory negligence.

At the time of the accident defendant was employing several gangs of men. The work in the main entry was under the direction of John Mason as foreman. Pharis Hudson and James Mayes were day laborers working under him. Pierce Barton was the foreman in charge of the air-way, and Ira Frazier and Joe Tucker were working under him. Jim George Evans was the blacksmith. The company was also constructing a tram-road leading from the main entry to the top of the incline. Thee Philpot was foreman in charge of this work. The decedent, James Philpot, was a laborer working under him. It was decedent's duty to hold and turn the steel drill while another would drive it with a sledge hammer. He was working some two or three hundred yards from the main entrance. It was a part of his duties to take the drills to the blacksmith shop for the purpose of having them sharpened. Decedent had been working for the company for five or six weeks, but had only been engaged on this particular work about a week. He frequently passed by the main entry and knew that they were blasting there. The work on the air course and main entry had been going on for some time. The air course had been dug back into the mountain for several feet. The work on the main entry had progressed until they struck solid rock. Mason and his assistants were engaged in blasting the rock at the mouth of the entry. The air course was located about 40 feet to the left of the main entry. The blacksmith shop was 90 feet from the air course, and about 120 feet from the main entry. The blacksmith shop consists of some poles covered with tar paper. From the shop the work going on in the main entry and the air course was in full view.

It was the custom of the men in charge of the blasting to give notice of the blast by calling out "Fire!" or "Fire in the hole!" When this warning was given, employees would go some distance from the blast, and take shelter behind trees or rocks. After work had progressed to a certain extent on the air course, the men usually took shelter in the air course. Decedent, however, had never taken shelter there, and he and those with whom he was

employed continued to get behind trees. On the occasion of the injury, Mason and his men had fired two shots. He fired the shots at the mouth of the main entry. Just prior to the time he was killed decedent was at the blacksmith shop, where he had gone to have a drill sharpened. Ira Frazier said to Evans and Philpot: "You had better go into the air course now. We are going to light these shots." Evans suggested to Philpot that they go to the air course, but Philpot laid down the drill he was holding and went off up the hill. After the shots were lighted, Mason and Frazier both hollowed "Fire!" Evans and the other men around went into the air course. The two shots were fired. The interval between the two shots is estimated at from a few seconds to two or three minutes. After these shots were fired, two shots were fired in the air course. These were small shots, however, and evidently had nothing to do with the accident. After the shots were fired, those present heard a noise from the direction in which Philpot had gone. They went in the direction of the noise and found Philpot lying near a sugar tree about 167 feet distant from the main entry. His body was between the sugar tree and the main entry, though a few feet below a direct line. His head was slightly nearer the tree. His body was eight or ten feet distant from the tree. Behind the tree were tracks, not only in the leaves but on a stone, which had the appearance of having been scratched by nails in one's shoes. There were several fresh rocks lying around. There was one rock weighing about three pounds that was found near Philpot's body. When the parties reached Philpot he was groaning. He was also unconscious, and his arms and legs were motionless. A wound was found in the top of his forehead. His hat was nearby, and the rim of it was cut.

Plaintiff bases his whole case on the theory that between the firing of the first and second shots Mason negligently called to the men to return to work by hollowing "All over" or "All gone" and that Philpot, in response to this signal, started to return to the blacksmith shop when a rock from the second blast struck him in the head and killed him. Two or three parties testify most emphatically that while they and the rest of the men were in the airway, Mason, after firing the first shot, called out in a loud voice "All over" or "All gone," and then in a low voice "but one." These witnesses say that the first part of the call could have been heard for a distance of 100 yards.

While in the presence of the jury they used the expression claimed to have been used by Mason, and imitated his tone of voice. Two or three witnesses swear that the rock from the first blast went down the hill, while the rock from the second blast went in the direction of Philpot. Furthermore, a rock sufficiently large to have caused Philpot's death was found near his body. Only one witness for plaintiff testifies to any blood being between Philpot's body and the tree, and he says there were a few drops two or three feet away.

For defendant it is insisted that the proof is as consistent with non-negligence as with negligence, and that therefore plaintiff failed to make out a case. It is argued that even under the proof of plaintiff the accident could have occurred in one of several ways: A rock may have struck the tree and glanced down and hit him. He may have been looking around the tree with his head unprotected, and received the blow. He may have slipped and lost his footing around the tree, and thus obtruded his head in time to be injured. Or he may have voluntarily come out from behind the tree and received the blow. That Philpot was behind the sugar tree there can be no doubt. Between the sugar tree and the entry, though not in a direct line, there was a buckeye tree, 27 inches in diameter. The sugar tree is 19 inches in diameter. As Philpot was standing immediately behind the tree and close up to it, it is by no means probable that a rock struck one of the limbs of the tree and was deflected so as to strike him in his forehead. Nor is it reasonable to presume that having been warned of the danger from the blasts, and having gone to the tree for the purpose of seeking shelter he voluntarily exposed himself to danger by protruding his head around the tree. Furthermore, the fact that he was unconscious when found, and his limbs were motionless, and that he was found eight or ten feet from the tree, is sufficient to justify the conclusion that he fell almost where he was struck. It was customary after a blast to signal the men to return to work. Philpot knew this, and it is not probable that he voluntarily and without any signal left the tree. But it is argued that the proof fails to show that Philpot heard any signal to return to work, and in response to that signal, he started to return, and was then injured by a rock from the second blast. The witnesses say that Mason gave the signal "All over" or "All gone" in a loud voice, adding

the words "but one more" in a low tone. They say that the first part of the expression could have been heard a hundred yards. It is true that they were all in the air course at the time the signal is alleged to have been given. It is true that it may have sounded louder to them because of being in the air course; but if it could be heard for a hundred yards, it was sufficiently loud to be heard for a distance of 167 feet. It does not take an exceedingly loud call to be heard that distance. The question as to whether decedent was struck by a rock in the second blast is more difficult of solution. Two or three witnesses say the rock from the first blast went down the hill, while the rock from the second blast went in the direction of decedent. Of course these witnesses were not in a position to see all of the rocks from the two blasts. It is therefore argued that notwithstanding this evidence, one of the rocks from the first blast may have struck decedent. As said before, however, he was behind the tree, and close to it. He had gone there for shelter. It is not probable that he stepped from behind the tree before the first shot was fired, and it is not likely that a rock was deflected by the limbs of the tree so as to strike him in the forehead. Furthermore, the rock which most probably struck him, and which was heavy enough to cause his death was found near his body, some eight or ten feet from the tree. Taking into consideration the custom of signaling the men to return to their work, the distance of decedent's body from the tree and his unconscious and helpless condition, the location of the rock that had been freshly blasted, and the further fact that the signal to return to work was given in a tone loud enough to be heard by him, we conclude that the evidence that he heard the signal and in response thereto started to return to work and was struck by a rock from the second blast, was sufficient to take the case to the jury, and sustain a finding in favor of plaintiff.

But it is insisted that decedent was guilty of contributory negligence, because, though told to do so, he failed to go into the air-way. While it may be true that those men employed immediately about the entry and air-way were in the habit of going into the air-way to protect themselves from blasts, it does not appear that decedent, who worked some two of three hundred yards away, had ever been in the habit of going there for that purpose. On the contrary, it was his custom and the

custom of the men working with him to go behind trees at a suitable distance from the blasts. He was not directed by anybody superior in authority to go to the air-way. He was simply advised to do so. The sugar tree was 167 feet from the place of the blast. His body was only 16 or 18 inches broad. The tree was 19 inches in diameter. Between him and the entry, though not in a direct line, was another tree 27 inches in diameter. There is no evidence tending to show that the tree behind which he went was not sufficient for his protection, or was not far enough away to affort him proper shelter, if behind the tree. We cannot say that because he refused to take the advice of other men to go into the air-way, but chose rather to follow the custom which he had always followed of going behind a tree 19 inches in diameter and 167 feet from the blast, he was, as a matter of law, guilty of contributory negligence.

As to plaintiff's contention that the trial court erred in setting aside the verdict rendered on the first trial, it is sufficient to say that it is not our rule to interfere with the action of the trial court in granting a new trial unless it appear that he abused his discretion. Upon a careful consideration of the record on the first trial, we cannot say that there was any abuse of discretion. Floyd v. Paducah Railway Co., 23 Ky. L. Rep., 1077; Miller v. Ashcraft, 98 Ky., 314; Brown v. L. & N. R. R. Co. 144 Ky., 546; Wilhelm v. Louisville Railway Co., 147 Ky., 196.

Judgment affirmed on original and cross-appeal.